## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| Elaine N. Toland, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-2068-JWL |
| ) | Case No. 05-2409-JWL |
| ) | |
| John E. Potter, Postmaster General, ) | |
| United States Postal Service, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

### MEMORANDUM AND ORDER

Plaintiff filed suit against defendant John E. Potter alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., arising out of her employment. This matter is presently before the court on defendant's motion to dismiss two discrete claims and for summary judgment as to all claims (doc. 60). As will be explained, the motion is granted in its entirety.

**I.   Facts**

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Plaintiff, a 56-year-old female, began her employment with the United States Postal Service in 1985 and she remains employed by the Postal Service today. Pertinent to her claims in this lawsuit, plaintiff became the Postmaster of Tecumseh, Kansas in

November 1995. At all relevant times, Sam Gonzales has been plaintiff's direct supervisor.

In 2002, the Postal Service, in lieu of a proposed construction project to expand the Tecumseh facility, decided to downsize the Tecumseh post office by moving the rural carriers employed at Tecumseh to a post office in Topeka, Kansas. In a letter dated April 29, 2002, Mr. Gonzales informed plaintiff about the decision to downsize the Tecumseh facility and how that decision would affect her employment. Essentially, Mr. Gonzales advised plaintiff that the Tecumseh post office would no longer be classified as a Level 15 post office and would be reclassified as a Level 11 post office. Plaintiff's salary would remain at a Level 15 for a two-year period even though she was no longer working at a Level 15 position; however, if the Postal Service offered plaintiff a Level 15 position within commuting distance at any time during that two-year period and she declined the position, then her salary would be reduced to a Level 11 consistent with the level of the Tecumseh facility.

Plaintiff, then, remained in Tecumseh receiving a Level 15 salary after the facility had been downsized to a Level 11 facility until August 2003, when Mr. Gonzales notified plaintiff that she was being reassigned to the position of Postmaster in Burlingame, Kansas, a Level 15 position. Defendant asserts that it reassigned plaintiff because she was a Level 15 employee and the Tecumseh facility had been downgraded to a Level 11 facility. Plaintiff contends that Mr. Gonzales reassigned plaintiff so that he could move a younger woman, Kelly Flint, into the Postmaster position at Tecumseh. Plaintiff asserts that Mr. Gonzales, at that time, was having an intimate relationship with Ms. Flint. Through her union representative, plaintiff appealed her reassignment on the grounds that the Postal Service had not followed the procedures outlined

in the Employee and Labor Relations Manual (ELM), the terms of which govern her employment with the Postal Service. That appeal was denied. In January 2004, plaintiff contacted an EEO counselor alleging that her transfer to Burlingame was based on her sex. She filed a formal complaint of discrimination in late March 2004.

In March 2004, plaintiff contacted Mr. Gonzales to request a hardship transfer from Burlingame back to Tecumseh. It is undisputed that she would have continued to receive a Level 15 salary if she had stayed at Burlingame. However, under the terms of the ELM, her voluntary request for a transfer from Burlingame to Tecumseh resulted in the reduction of her pay to a Level 11. Despite the express terms of the ELM, plaintiff states that she never "agreed" to the salary reduction and believed her salary was protected at a Level 15 for a two-year period beginning from the date Tecumseh was downsized.[1] The Postal Service granted plaintiff's request and she was transferred back to the Postmaster position in Tecumseh where she began receiving a Level 11 salary.

According to plaintiff, Mr. Gonzales, shortly after plaintiff returned to Tecumseh, began retaliating against her for "forcing" Ms. Flint out of the Tecumseh facility.[2] Specifically, plaintiff asserts that Mr. Gonzales refused plaintiff's requests to change the hours of operation

---

[1] The two-year salary period, then, was from August 2002 through August 2004.

[2] In her response to defendant's summary judgment motion, plaintiff asserts that Mr. Gonzales retaliated against her because she forced Ms. Flint out of the Tecumseh facility when she returned to that facility from Burlingame. In the pretrial order, however, plaintiff asserts that Mr. Gonzales retaliated against her for her "actions" as well as her "complaints."

3

for the Tecumseh facility; failed to recognize plaintiff in certain respects; and removed the computer from the Tecumseh facility. With respect to the hours of operation, those hours, prior to plaintiff's transfer to Burlingame, were 7:00a.m. to 4:30 p.m. with ninety minutes for lunch. When Ms. Flint became the Postmaster of Tecumseh, she requested that the hours be changed to 8:00a.m. to 5:00p.m. and Mr. Gonzales approved that change. Upon plaintiff's return to Tecumseh, she asked Mr. Gonzales to change the hours back to 7:00a.m. to 4:30p.m. Mr. Gonzales denied that request. About one month later, plaintiff asked Mr. Gonzales to reconsider her request and again asked him to change the hours of operation. Mr. Gonzales again denied her request.

In May 2004, plaintiff witnessed an automobile accident on the highway and she stopped her car to assist at the scene. Thereafter, plaintiff sent an e-mail to Mr. Gonzales advising him of her assistance at the accident and asking him to forward the information to the offices to communicate the importance of using seat belts. Mr. Gonzales did not acknowledge the e-mail and never passed the information on to other offices. During this same time frame, Mr. Gonzales and Steve Pinkerton, the Postmaster of Topeka, Kansas, were guests together on a call-in radio program. Several postal customers called into the program and one of those customers complimented the work done by plaintiff. Later, Mr. Gonzales sent an e-mail to all of his offices congratulating those individuals and offices who received compliments. Mr. Gonzales did not mention plaintiff in this e-mail.

According to plaintiff, she questioned Mr. Gonzales about his refusal to recognize her for the compliment she received on the radio program. The next day, Mr. Gonzales removed the

sole computer from the Tecumseh facility. Mr. Gonzales testified that he removed the computer because some of his higher level offices with more responsibilities did not have computers and Tecumseh was the only Level 11 facility that had a computer. According to plaintiff, the removal of the computer negatively affected her ability to do her job because she was "out of the loop." She was unable to receive e-mails from Mr. Gonzales regarding special projects, she did not receive e-mails from "headquarters" about "things that go on" and she was cut off from communication with her fellow Postmasters. She admits that she could have had another Postmaster or Mr. Gonzales print off these e-mails for her, but she did not request that anyone do that. Although she was able to continue to work as a Postmaster during the six-month period when Tecumseh did not have a computer (plaintiff received a computer for the facility six months after Mr. Gonzales removed it), she performed her job as a Postmaster differently than she had with a computer. With a computer, plaintiff had paid bills online, ordered retail products online, entered time cards online, used the Postal Service's website for forms and information, and utilized the "track and confirm" system for her customers. Plaintiff found alternative ways to complete these tasks.

In late May 2004, plaintiff again contacted an EEO counselor, alleging sex and age discrimination and retaliation based on Mr. Gonzales' refusal to change the hours of operation for the Tecumseh facility; his failure to recognize her for her contributions to the local community and to the Postal Service; and his decision to remove the computer from Tecumseh. Plaintiff filed a formal complaint concerning these subjects in September 2004.

5

## II.     Exhaustion of Administrative Remedies[3]

As a federal employee, plaintiff must bring a complaint of discrimination to the attention of an EEO counselor within 45 days of the occurrence or conduct giving rise to the complaint. *See* 29 C.F.R. § 1614.105(a)(1). Defendant contends that it transferred plaintiff from Tecumseh to Burlingame more than 45 days prior to her filing a complaint with an EEO counselor and, therefore, plaintiff's claims based on her transfer are subject to dismissal.[4] The court agrees.

It is undisputed that defendant transferred plaintiff to Burlingame on August 4, 2003 and that plaintiff did not contact an EEO counselor concerning the transfer until January 26, 2004, nearly 175 days after her transfer.[5] Plaintiff concedes that she did not contact an EEO counselor within 45 days of her transfer. She contends, however, that her claim is nonetheless timely because she contacted an EEO counselor within 45 days of the date she "learned" that her

---

[3] In its motion, defendant also moves to dismiss an additional claim (one based on the downsizing of the Tecumseh post office) based on plaintiff's failure to exhaust her administrative remedies with respect to the claim. In response, plaintiff expressly abandons the claim and, thus, the claim is dismissed.

[4] Defendant also asserts that the claim is time-barred because plaintiff did not file her lawsuit within 90 days of the date of the final agency decision. The court declines to reach this issue in light of its conclusion that plaintiff's failure to contact an EEO counselor within 45 days of her transfer is dispositive.

[5] In the context of this claim, the parties dispute whether defendant's first request for admissions, including a request asking plaintiff to admit that she "cannot state a claim upon which relief may be granted arising out of her transfer" to Burlingame because she contacted an EEO counselor outside the 45-day period, should be deemed admitted based on plaintiff's failure to respond to those requests. The court need not resolve this dispute because it has not relied on those admissions in any respect in concluding that the claim is time-barred. Indeed, the court has not relied on the requests for admissions in resolving any aspect of defendant's motion.

transfer was discriminatory.  According to plaintiff, she discovered in late December 2003 that defendant had transferred her to Burlingame based solely on Mr. Gonzales' desire to move Ms. Flint, his alleged paramour, to Tecumseh as the Postmaster.  This argument, however, is unavailing as it is knowledge of the adverse employment decision itself that triggers the running of the 45-day period.  *See Davidson v. America Online, Inc.*, 337 F.3d 1179, 1187 (10th Cir. 2003) (cause of action accrues on the date the employee is notified of the adverse action); *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994) (statute of limitations began running on date employees were notified of transfers and not when employees first suspected that transfers were discriminatory); *see also Smith v. EEOC*, 2006 WL 1230680, at *5 (10th Cir. May 9, 2006) (fact that plaintiff may not have discovered alleged discriminatory motive for adverse action until later does not extend 45-day period in which to contact an EEO counselor).[6]

While it is not entirely clear from her response, it appears that plaintiff may also contend that she has satisfied the 45-day period because she initiated, through her union representative, an appeal of the transfer decision within 45 days of the decision and because she contacted an EEO counselor within 45 days of the denial of that appeal.  Plaintiff, however, never asserted

---

[6]Although the court does not reach the merits of plaintiff's transfer claim, the court notes that summary judgment, in all likelihood, would be warranted based on plaintiff's stated belief that defendant transferred her to Burlingame based solely on Mr. Gonzales' desire to move Ms. Flint into the Tecumseh position.  *See Taken v. Oklahoma Corp. Commission*, 125 F.3d 1366 (10th Cir. 1997) (employment decisions based on voluntary romantic affiliations do not violate Title VII) (no Title VII claim based on supervisor's promotion of less qualified paramour); *Ayers v. American Tel. & Tel. Co.*, 826 F. Supp. 443, 447 (S.D. Fla. 1993) (extending "paramour" rationale from Title VII context to ADEA context).

as a basis for her appeal any alleged discriminatory conduct; rather, her appeal was based solely on alleged procedural deficiencies in connection with the transfer. Thus, no argument can be made that the agency was alerted to her discrimination claim by virtue of the appeal and the appeal did not serve the purpose of consultation with the EEO counselor. *See Smith*, 2006 WL 1230680, at *5 (filing of union grievance did not satisfy 45-day time limit where grievance did not allege discrimination).

Plaintiff, then, has not satisfied the 45-day requirement and she does not set forth any facts supporting an argument that the limitations period should be tolled. This claim, then, is dismissed.[7]

### III. Merits of Remaining Claims

Defendant moves for summary judgment on plaintiff's claims that defendant, based on plaintiff's gender, age and/or in retaliation for plaintiff's engaging in protected activity, denied her salary protection; denied her requests to change the hours of operation of the Tecumseh facility; failed to recognize her efforts; and removed the computer from the Tecumseh facility.

---

[7]In her response to defendant's motion for summary judgment, plaintiff alleges in some detail that Mr. Gonzales lied in his deposition about his role in plaintiff's reassignment to Burlingame. The court need not address this issue, however, because it does not reach the merits of the reassignment claim. Plaintiff also suggests that Mr. Gonzales engaged in other discriminatory acts, including promising a position to plaintiff at the Mayetta post office when that position was not open and reducing plaintiff to a Level 11 employee prior to the time she was transferred to Burlingame. While it is not clear that plaintiff intends to present these allegations as discrete claims, it is undisputed that plaintiff did not bring these concerns to an EEO counselor and, in any event, these allegations do not appear in the pretrial order. The court, then, need not address these allegations.

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

As plaintiff has no direct evidence of discrimination, her claims are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006) (Title VII); *Pippin v. Burlington Resources Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006) (ADEA). Under the *McDonnell Douglas* framework, plaintiff has the initial burden of establishing a prima facie case of discrimination or retaliation. *See Antonio*, 458 F.3d at 1181; *Pippin*, 440 F.3d at 1192. If she establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, non-discriminatory or non-retaliatory reason for each of the adverse employment actions. *See Antonio,* 458 F.3d at 1181; *Pippin*, 440 F.3d at 1193. If defendant meets this burden, summary judgment against plaintiff is warranted unless she shows that there is a genuine issue of fact as to whether defendant's reasons are pretextual. *See Antonio,* 458 F.3d at 1181; *Pippin*, 440 F.3d at 1193; *Medina v. Income Support Div., State of New Mexico*, 413 F.3d 1131, 1136 (10th Cir. 2005). To show that an employer's proffered nondiscriminatory reason for an employment action is pretextual, "a plaintiff must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and

9

hence infer that the employer did not act for the asserted non-discriminatory reasons." *Antonio*, 458 F.3d at 1183 (quoting *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 490 (10th Cir. 2006)).

In its motion for summary judgment, defendant contends that summary judgment is warranted on all claims because plaintiff has failed to establish an essential element of her prima facie case–that she suffered an adverse employment action. In the alternative, defendant contends that plaintiff cannot establish that defendant's proffered reasons for the adverse actions are pretextual. The Supreme Court most recently addressed the contours of adverse employment actions in *Burlington Northern & Santa Fe Ry. v. White*, ___ U.S. ___, 126 S.Ct. 2405 (2006). In that case, the Court applied a more lenient standard in analyzing the anti-retaliation provisions of Title VII. *Piercy v. Maketa*, 480 F.3d 1192, 1203 n.12 (10th Cir. 2007). A challenged action may be adverse in a retaliation case if "a reasonable employee would have found [it] materially adverse." *Id.* (citations and quotations omitted). The relevant inquiry is whether the employer's action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 126 S. Ct. at 2415 (internal quotations omitted).

The Supreme Court, however, made clear that the substantive discrimination provisions of Title VII are limited "to [adverse] actions that affect employment or alter the conditions of the workplace." *Piercy*, 480 F.3d at 1203. Thus, while *Burlington Northern* modified the retaliation standards for adverse actions, it had no similar effect on the Tenth Circuit's discrimination jurisprudence. *Id.* Accordingly, for purposes of plaintiff's discrimination claims, the court examines whether plaintiff has shown a "significant change in employment status, such

10

as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032-33 (10th Cir. 2004). The Circuit does consider "a mere inconvenience or an alteration of job responsibilities to be an adverse employment action." *Piercy*, 480 F.3d at 1203 (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998)).

### A.   *Salary Protection*

Plaintiff asserts that defendant violated Title VII and/or the ADEA when defendant refused to continue paying plaintiff a Level 15 salary when she transferred back to Tecumseh. According to plaintiff, she was entitled to keep her Level 15 salary for six more months pursuant to the two-year salary protection provided to her by defendant when the Tecumseh facility was downsized to a Level 11 facility. Assuming, without deciding, that plaintiff suffered an adverse employment action with respect to her salary (despite the fact that defendant transferred plaintiff back to Tecumseh at her own request and she does not dispute that she would have maintained a Level 15 salary had she stayed at Burlingame), summary judgment is nonetheless appropriate on this claim because plaintiff cannot show that defendant's proffered reason for reducing her salary (and denying her salary protection) is pretextual.

Defendant asserts that plaintiff's salary was reduced to a Level 11 upon her transfer back to Tecumseh based on the express terms of the ELM–terms which plaintiff admits govern her employment with the Postal Service. Pursuant to section 415.51 of the ELM, "an employee who voluntarily changes to [a] lower grade . . . is immediately reduced to the lower grade, and the

11

salary is set at the same relative percentile point in the lower position's salary range. . . . If the employee has a form of rate retention, it is terminated." In response to defendant's explanation, plaintiff simply asserts that she "never agreed" to have her salary reduced to a Level 11 and that she believed her salary would remain at a Level 15 until the expiration of the two-year protection period. The fact that plaintiff never agreed to have her salary reduced is of no consequence when she admits that the terms of the ELM govern her employment and she does not dispute that the application of section 415.51 results in the reduction of her salary to a Level 11 upon her transfer back to Tecumseh. Plaintiff has come forward with no evidence that any other employee enjoyed salary protection under a similar circumstance or that section 415.51 was not applied uniformly to all employees. Because plaintiff has not cast doubt on defendant's proffered rationale, summary judgment is granted in favor of defendant on this claim.

### B.    *Denying Plaintiff's Requests to Change Hours of Operation*

Plaintiff also asserts a claim based on defendant's denial of plaintiff's requests to change the hours of operation for the Tecumseh post office back to what they were prior to her transfer to Burlingame (7:00 a.m. to 4:30p.m.). Summary judgment is appropriate on this claim as well as plaintiff cannot establish that she suffered an adverse employment action for purposes of either the substantive discrimination provisions of Title VII and the ADEA or the anti-retaliation provisions of those statutes. According to plaintiff, defendant's denial of her requests affected her ability to achieve "a higher score for my merit" because she was unable to generate revenue from customers who used the early morning hours. Plaintiff offers no evidence, however, that

12

she actually lost any revenue or any customers based on defendant's refusal to change the opening hour of operation back to 7:00a.m. and there is no evidence that she was ever assigned a lower "merit" score based on the asserted lost revenues.

In short, plaintiff has come forward with no evidence that defendant's refusal to change the hours of operation for the post office affected her employment status in any way or had any import such that a reasonable employee might consider it materially adverse. In the absence of such evidence, plaintiff cannot establish that she suffered an adverse employment action for purposes of the substantive discrimination provisions of Title VII and the ADEA, *see Aquilino v. University of Kansas*, 268 F.3d 930, 936 (10th Cir. 2001) (speculative harm does not constitute adverse employment action), and she cannot establish that defendant's denial of her requests "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Burlington Northern*, 126 S. Ct. at 2415.[8]

### C. Failure to Recognize Plaintiff's Efforts

---

[8]In the argument portion of her brief, plaintiff addresses this specific claim in only one sentence, asserting that Mr. Gonzales denied her requests concerning the hours of operation in retaliation for plaintiff essentially "forcing Kelly Flint out" of the Tecumseh post office when she was transferred back from Burlingame. Forcing Ms. Flint out of Tecumseh, however, is not an activity that would be protected by Title VII or the ADEA. To the extent, then, that plaintiff's brief could be construed to abandon her gender- and age-based claims concerning the denial of her requests and to limit her retaliation-based claims to these facts, summary judgment would undoubtedly be appropriate. *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1122 (10th Cir. 2007) ("Both Title VII and the ADEA forbid employers from retaliating against an employee when that employee takes action in opposition to a discriminatory practice.").

13

Plaintiff also asserts claims based on Mr. Gonzales' failure to acknowledge plaintiff's e-mail to him concerning her assistance at the scene of the automobile accident; his failure to send an e-mail to the offices that reported to him concerning plaintiff's assistance and the importance of wearing seat belts; and his failure to recognize plaintiff for favorable comments she received during the call-in radio program. Without question, no reasonable jury could conclude that any of these actions constitute adverse employment actions under the Tenth Circuit's discrimination jurisprudence or the Supreme Court's decision in *Burlington Northern*. It is undisputed that plaintiff's employment status was not affected in any respect by Mr. Gonzales' actions. *See Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (adverse action for purposes of substantive discrimination provisions of Title VII is one that affects employment or alters the conditions of the workplace). Viewing the evidence in the light most favorable to plaintiff, she suffered, at the very most, a petty slight or minor annoyance that is simply not actionable under the federal anti-discrimination laws. As the Supreme Court explained in *Burlington Northern*:

> An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. See 1 B. Lindemann & P. Grossman, Employment Discrimination Law 669 (3d ed.1996) (noting that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers" are not actionable under § 704(a)).

126 S. Ct. at 2415. Summary judgment on these claims is appropriate.[9]

---

[9]Like her claim concerning the denial of her requests to change the hours of operation, the argument portion of plaintiff's response addresses her "failure to recognize" claims in only one sentence, asserting that Mr. Gonzales refused to recognize her "accomplishments" in retaliation for plaintiff forcing Ms. Flint out of the Tecumseh post office when she was transferred back from Burlingame. For the same reasons discussed in connection with her

14

*D.     Removal of Computer*

Finally, plaintiff claims that defendant violated Title VII and/or the ADEA when Mr. Gonzales removed the computer from the Tecumseh facility. For purposes of the substantive discrimination provisions of Title VII and the ADEA, however, plaintiff cannot establish that the removal of the computer constitutes an adverse employment action. The court does not doubt that the removal of the computer rendered certain tasks more difficult and time-consuming for plaintiff. Similarly, plaintiff's lack of access to e-mail communications may have been very frustrating to plaintiff. But plaintiff has directed the court to no evidence (and she does not allege) that her employment status was affected in any way by the removal of the computer. While she vaguely references her lack of knowledge about "special projects," there is no evidence that her inability to assist with such projects affected her promotion opportunities, pay raise opportunities or any other aspect of her job. She does not allege that her job responsibilities were altered–only that she had to alter the way in which she fulfilled those responsibilities and that the computer was far more convenient for accomplishing her job duties. In such circumstances, no adverse action occurred. *See Piercy v. Maketa*, 480 F.3d 1192, (10th Cir. 2007) ("mere inconvenience" does not constitute an adverse employment action); *Petersen v. Utah Dept. of Corrections*, 302 F.3d 1182, 1189-90 (10th Cir. 2002) (fact that plaintiff was "taken out of the information loop" not a materially adverse employment action)

---

claim concerning the denial of her requests to change the hours of operation, summary judgment would be appropriate on this claim as well. *See supra* note 8.

15

To the extent this claim is based on the anti-retaliation provisions of Title VII and/or the ADEA, plaintiff cannot show that defendant's conduct "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 126 S. Ct. at 2415; *see also Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1123 (10th Cir. 2007) (applying *Burlington Northern* standard to ADEA retaliation claim). [10] While a reasonable person might have found the removal of the computer to be frustrating and inconvenient (and, in the context of a different job with different responsibilities might find it to be materially adverse), a reasonable person would not believe that action in this case to be "materially" adverse when it is undisputed that plaintiff was able to perform her job functions without the use of a computer and she has not shown a specific detriment to her employment caused by the removal of the computer. Summary judgment, then, is appropriate on this claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss two discrete claims and for summary judgment as to all claims (doc. 60) is **granted** in its entirety.

**IT IS SO ORDERED.**

---

[10] Moreover, to the extent her summary judgment response can be construed as limiting her retaliation claim to one premised on the theory that Mr. Gonzales removed the computer in retaliation for plaintiff questioning him about his failure to recognize her for the compliments she received on the radio show or for plaintiff's forcing out Kelly Flint, summary judgment would be appropriate because these activities would not be protected for purposes of the anti-retaliation laws.

Dated this 8th day of June, 2007, at Kansas City, Kansas.

                                          s/ John W. Lungstrum
                                          John W. Lungstrum
                                          United States District Judge